# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

MISTY TUGGLE,

   **Plaintiff,**

  *vs.*           **CAUSE NO.  1:15-cv-70-SEB-DKL**

CAROLYN W. COLVIN,

   **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Misty Tuggle sues for judicial review of the defendant Commissioner's denial of her applications for a period of disability, disability-insurance, and supplemental-security-income benefits under the Social Security Act.  The district judge referred the issues presented in this Cause to this magistrate judge for submission of a report and recommended disposition.  *Order Referring Issues to Magistrate Judge* [doc. 13].

### Standards

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record.  42 U.S.C. ▪ 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).  Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence.  *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).  If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758

(7th Cir. 2004).  This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations.  Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner.  Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  *Carradine*, 360 F.3d at 758.  While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*.  *Jones v. Astrue,* 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

2

whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). 20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966. The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. ▪§ 423(d)(2)(B) and 1382c(a)(3)(G). 20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the applicant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling. 20 C.F.R. ▪ 404.1525. If the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related

3

physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions.   At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled.   Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy.   42 U.S.C. ▪ 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy.   *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).   If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination.   The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled.   If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be used to determine disability at that level.   Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics.   *Lee v.*

4

*Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993).  The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist.  If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts.  If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1]  An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision.  If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review.  42 U.S.C. ▪ 405(g).  If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## Background

Ms. Tuggle applied for a period of disability, disability-insurance, and supplemental-security-income benefits in December 2011, alleging an onset date in

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration.  20 C.F.R. Part 404, Subpart Q (▪ 404.1601, *et seq.*).  Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

September 2007.  Her applications were denied on initial and reconsideration reviews.  A hearing was held in October 2013, during which Ms. Tuggle and a vocational expert testified.  Ms. Tuggle was not represented by counsel at the hearing.  The ALJ issued her decision in June 2013.  (R. 20.)

The ALJ found that Ms. Tuggle met the insured-status requirements of the Act through June 30, 2015.  At step one of the sequential evaluation process, the ALJ found that Ms. Tuggle had not engaged in substantial gainful activity since her alleged onset date of September 20, 2007.  At step two, the ALJ found that Ms. Tuggle has the severe impairments of osteoarthritis and degenerative joint disease of her bilateral knees, a herniated lumbar disc with lumber radiculopathy, obesity, depression, anxiety, and polysubstance abuse.

At step three, the ALJ found that none of Ms. Tuggle's impairments, severe and non-severe, singly or in combination, meets or medically equals any of the listing of impairments.  She examined the listing 1.00 musculoskeletal-system conditions for her osteoarthritis and degenerative joint disease of bilateral knees, and herniated lumbar disc with lumbar radiculopathy.  She considered S.S.R. 02-1p regarding Ms. Tuggle's obesity, but did not identify any specific listings that she evaluated.  She examined listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance-addictive disorders) with respect to her mental impairments.

6

For the purpose of steps four and five, the ALJ found that Ms. Tuggle has the residual functional capacity to perform a range of sedentary work with additional postural, exertional, and non-exertional restrictions:  never climbing ramps, stairs, ladders, ropes, or scaffolds and never balancing; only occasionally stooping, crouching, kneeling, and crawling; no exposure to slippery surfaces, uneven terrain, and unprotected heights; performing no more than simple, routine, and repetitive tasks; no interaction with the public and only occasional superficial interaction with co-workers and superiors.  The ALJ also restricted Ms. Tuggle to having a sit/stand option at will, sitting no more than twenty to thirty minutes, and standing no more than twenty minutes.

At step four, the ALJ found that Ms. Tuggles' RFC prevents her from performing any of her past relevant work.  At step five, relying on the testimony of a vocational expert, the ALJ found that, given Ms. Tuggle's RFC, age, education, and work experience, a significant number of jobs exist in the national economy that she can perform and, therefore, she is not disabled.  The ALJ denied Ms. Tuggle's claims.

Current counsel began representing Ms. Tuggle some time after the ALJ issued her decision on June 28, 2013 and before counsel filed Ms. Tuggle's request for review by the Appeals Council on August 28, 2013, (R. 7, 8, 18).[2]  The Appeals Council noted that 103

---

[2] Ms. Tuggle's Appointment of Counsel and counsel's Acceptance of Appointment were not executed until September 2 and 4, 2013, respectively.  (R. 19.)

7

pages of additional medical records, (Exhibits 15F and 16F (R. 423-525)), were submitted after the ALJ's decision, and that counsel filed a brief presenting Ms. Tuggle's assertions of errors by the ALJ.  (R. 5, 231.)

The Appeals Council denied Ms. Tuggle's request to review the ALJ's decision, (R. 1), which rendered the ALJ's decision the final decision of the Commissioner on Ms. Tuggle's claims and the one that the Court reviews.

## Discussion

Ms. Tuggle asserts six categories of errors in the ALJ's decision.

**1. Invalid waiver of right to representation.**  Ms. Tuggle argues that her waiver of representation at the hearing was not valid because the ALJ did not fully advise her of all of the required elements to create a valid waiver.

> To ensure a valid waiver of counsel, we require the ALJ to explain to the *pro se* claimant (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees.

*Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).  *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).[3]

---

[3] The only authority that Ms. Tuggle cites for the information that an ALJ must give a claimant is the Social Security Administration's *Hearing, Appeals and Litigation Law Manual* ("*HALLEX*"), which is an internal operating-procedures manual.  *Stepp v. Covlin*, 795 F.3d 711, 724 n. 6 (7th Cir. 2015).  Neither the Supreme Court nor the Court of Appeals for the Seventh Circuit has held that the *HALLEX* is binding on

During the hearing, the ALJ advised Ms. Tuggle:  "Like I said, you're not present with a representative, and so, I want to make sure you understand that you have a right to a representative and this representative would be able to obtain documents on your behalf, submit arguments on your behalf and also question witnesses on your behalf.  Are you aware of that?"  (R. 45.)  Ms. Tuggle answered affirmatively.  The ALJ asked Ms. Tuggle if she wanted to proceed without a representative and she, again, answered affirmatively.  (*Id.*)  Thus, the ALJ orally advised Ms. Tuggle of *Binion*'s first element:  the manner in which an attorney could aid in the presentation of her claim.  The ALJ then handed Ms. Tuggle a *Waiver of Representation* form, told her that it "indicates that you are aware of your right to a representative and you have waived that right." (R. 45.)  She signed that waiver form.  (R. 124.)  In addition to the advices given by the ALJ, the one-page waiver form states that counsel's assistance "may be provided for free by certain providers" and by other providers on a contingency basis, and that the judge must approve any fee charged by a representative.  (R. 124.)  The form also acknowledges that Ms. Tuggle received a referral list of legal-service providers from the Social Security Administration.  (*Id.*)  Thus, the *Waiver of Representation* form advised Ms. Tuggle of *Binion*'s second element and part of the third.

---

the Administration or creates rights in claimants, as opposed to the binding effects of formally-adopted regulations codified in the C.F.R. and Social Security Rulings.  Therefore, the Court does not rely on the *HALLEX*.  The binding precedents of *Binion* and *Skinner* are sufficient authority.

Before this, in March 2013, the Social Security Administration had sent to Ms. Tuggle a *Notice of Hearing* that informed her of the scheduling of her hearing and other matters.  (R. 103.)  Accompanying this *Notice* was a two-page form titled *Your Right To Representation* that included all of the *Binion* required advice elements for a valid waiver.  (R. 110-11.)  Ms. Tuggle signed and returned the requested *Acknowledgement of Receipt (Notice of Hearing)* form which acknowledged her receipt of the *Notice of Hearing.*  (R. 122.)  At the hearing, Ms. Tuggle also acknowledged reviewing all of the paperwork that she was sent.  (R. 45.)

Ms. Tuggle does not explicitly argue that an ALJ must orally recite all of the required *Binion* elements at the hearing in order for the claimant's waiver of representation to be valid.  Her acknowledgement that the *Notice of Hearing* packet included the required elements "in an enclosed print-out, but it is buried in the paper and not clearly stated," (*Memorandum in Support of Complaint* [doc. 17] ("*Brief*"), at 18), suggests that she does not contend that the ALJ's failure to advise her of all of the elements is not, by itself, fatal, if all of the elements are communicated, explicitly and clearly.

*Binion* states that an ALJ must explain the required elements to a claimant to ensure a valid waiver, but it is not clear that that explanation must be made orally to a claimant at the hearing.  There are some indications in circuit precedent that the required information may be explained, in full or in part, by way of written notices sent to a

10

claimant.  See *Thompson v. Sullivan*, 933 F.2d 581, 584-85 (7th Cir. 1991) (identifying only the "information that will ensure a valid waiver" and discussing whether that information was included within both written notices and the ALJ's colloquy with the claimant); *Skinner v. Astrue*, 478 F.3d at 841 (noting, without comment, the Commissioner's concession that the claimant was not informed of all required elements because neither the ALJ's colloquy or the Commissioner's written notices included all elements), 842 (finding that written notices sufficiently advised the claimant of her appearance rights and consequences to render her signed waiver-of-appearance form a valid waiver).  District courts in this circuit have held that written explanations of *Binion*'s required elements are effective.  *E.g.*, *Al-Ramadi v. Colvin*, No. 1:14-cv-327, 2015 WL 7761617, *5 (N.D. Ind., Dec. 2, 2015); *Crull v. Colvin*, No. 2:13-cv-322-JEM, 2015 WL 1128871, *11 (N.D. Ind., March 11, 2015); *Valenti v. Colvin*, No. 1:12-cv-348, 2013 WL 6229135, *7 (N.D. Ind., Dec. 2, 2013); *Martin v. Astrue*, No. 1:08-cv-46, 2009 WL 187716, *6 (N.D. Ind., Jan. 26, 2009); *Young v. Apfel*, No. 3:98-cv-209RP, 1999 WL 325026, *7 (N.D. Ind., May 19, 1999).  The Court agrees with these decisions and finds that the Commissioner's duty to advise *pro se* claimants of the elements identified in *Binion* may be satisfied by written notices and/or oral explanations by the ALJ at the hearing.

Ms. Tuggle's contention that the "print-out" *Your Right to Representation* that was included in the *Notice of Hearing* packet that she received was ineffective to provide notice because it was "buried in the paper and not clearly stated" is merely conclusory.  She fails

to explain or show how it was "buried" or what was not clearly stated therein.  Any argument, therefore, has been forfeited.

Ms. Tuggle argues that, beyond failing to ensure that *Binion's* notice requirements were fulfilled, the ALJ failed to consider whether she was making a knowledgeable waiver of her right to representation because of her limited education; moderate limitations in concentration, persistence, or pace; and poor reading comprehension.  She fails to assert that any of these factors actually rendered her incapable of understanding the information that she was given in the notices or by the ALJ and, therefore, giving a valid waiver of representation.  The ALJ was aware of Ms. Tuggle's alleged mental limitations — having found them himself — and the Court can fairly assume that the ALJ concluded that they were not sufficiently limiting as to render her waiver invalid.

Ms. Tuggle has not shown that her waiver of representation was invalid.

**2. Failure to develop the record.**  When a claimant proceeds without representation — regardless of the existence of a valid waiver — the ALJ has a duty to fully and fairly develop the record by scrupulously and conscientiously probing the claimant for possible disabilities and exploring for all of the relevant facts.  *Binion*, 13 F.3d at 245.[4]  Ms. Tuggle argues that the ALJ failed to fully and fairly develop the record

---

[4] If a claimant proceeds *pro se* without waiving his right to representation, the burden falls on the Commissioner to show that the ALJ fulfilled this duty.  *Binion*, 13 F.3d at 245.  In this case, because Ms. Tuggle waived her right to representation, it is her burden to show that the ALJ failed to fulfill this duty.

12

because the ALJ **(1)** proceeded with the hearing despite Ms Tuggle informing her that "she did not have the ability to go through the file before the hearing" and the ALJ then failed to fully inform her of the contents of the record, **(2)** the ALJ did not give Ms. Tuggle an opportunity to cross-examine the vocational expert or inquire about his professional qualification, and **(3)** the ALJ made no attempt to obtain four sets of medical records.

  **a. Review of the file.** Ms. Tuggle's asserted "inability to go through the file before the hearing" was not due to any inability to understand or comprehend, or a lack of time; rather, it was due to the fact that the file was sent to her on a compact disk and Ms. Tuggle did not have a computer to read it.  (R. 46.)  Ms. Tuggle does not state when she received the CD.  The *Notice of Hearing* that was sent to her on March 1, 2013, two months before the hearing, notified her of the following:

> If you want to see your file before the date of your hearing, please call this office and make arrangements.  If your file is electronic, you may ask for a copy on a compact disc.  You may also review your file on the day of your hearing if you come in at least 30 minutes before the time set for your hearing.  Please call us in advance if you will need more than 30 minutes to review your file.

(R. 105.)  Ms. Tuggle does not describe the circumstances of her receiving only a CD of the file and does not describe her opportunities and efforts to review the file before the hearing (*e.g.*, whether and when she called to make arrangements to see her file, as instructed in the *Notice*; requested the CD or whether it arrive unrequested; called the Administration after receiving the CD to make arrangements to see a paper copy; arrived early to the hearing to review the file, as instructed in the *Notice*).  Without these details,

there is no basis for the Court to find that her failure to review the file before the hearing, or the ALJ's asserted incomplete description of it at the hearing, would constitute a failure by the ALJ to fully and fairly develop the record, rather than her own choice or negligence. Ms. Tuggle was aware that she had not reviewed the file but did not request a continuance and affirmatively elected to proceed.

In addition, the ALJ informed Ms. Tuggle that he would hold open the record for additional submissions, and he did so for months afterward. Ms. Tuggle does not explain why she could not have reviewed the file after the hearing and submitted additional evidence or briefs.

**b. Opportunity to question the vocational expert.** The hearing transcript shows that, while the ALJ did not ask if Ms. Tuggle had questions for the vocational expert, neither did he preemptively foreclose her from doing do or deny any request by her for the opportunity. (R. 65.) Ms. Tuggle does not assert that she felt that she did not have the opportunity to ask questions, and she does not identify any questions that she would have asked that would have elicited answers that likely would have changed the disability outcome. By challenging the ALJ's fulfillment of her duty to develop the record, Ms. Tuggle must show "concrete evidence or information" that would have resulted from her questioning of the vocational expert that would have changed the ALJ's findings. *Binion*, 13 F.3d at 246 ("Plaintiff has not pointed to any specific facts that were not brought out during the hearing nor has she provided any new medical evidence.

14

Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."). Ms. Tuggle has not shown that the ALJ deprived her of the opportunity to question the vocational expert or that any such deprivation was harmful.

**c. Failure to obtain records.** At the conclusion of the hearing, the ALJ stated that he would get updated records from Hancock Medical Center and St. Vincent Medical Group, (R. 46-47, 65-66), that Ms. Tuggle had mentioned might be available, (R. 53, 55). Ms. Tuggle also states that the record shows that she was seen at the emergency room at Witham Hospital and the record "contains the allusion to another possible emergency room visit on November 2, 2011." (*Brief,* at 19-20.) Apparently, none of these records are in the record and Ms. Tuggle attributes that to the ALJ failing in his duty to fully and fairly develop the record.

After the April 30, 2013 hearing, the Social Security Administration made efforts to obtain the St. Vincent Medical Group and Hancock Medical Center records. However, on June 21, 2013, Ms. Tuggle called the Administration to inquire about the status of her case and, when told that there was trouble obtaining the medical records, she stated that the Administration "will not be receiving any [medical records] from St. Vincent or Hancock Family Practice that the [claimant] has not already submitted," (R. 230), which caused the Administration to cease its efforts to obtain the records, (*id.*). Ms. Tuggle apparently argues that the ALJ's duty to fully and fairly develop the record required him

15

to continue efforts to obtain the records despite her statement that no additional records would be forthcoming.  Ms. Tuggle does not describe the circumstances surrounding the subject records that would show why her notice that no additional records would be received did not indicate that further efforts to obtain them would be futile.  The Court cannot simply assume that such circumstances existed.

Ms. Tuggle argues that the ALJ failed in his duty to fully and fairly develop the record when he "made no attempt to obtain" the records of an emergency-room visit to Witham Hospital for edema in May 2013 and "another possible emergency room visit" to an unidentified hospital for an unidentified reason in November 2011.  (*Brief,* at 19-20.) She contends that other records she submitted "show" the former visit and that the record "contains the allusion" to the latter visit.  (*Id.*)  But Ms. Tuggle does not suggest or show any material evidence that these records contain that likely would have or even might have changed the ALJ's decision.  The record does contain evidence referring to these visits, including some of the medical findings and treatment suggestions resulting therefrom.  (R. 415-22, 427-29.)  Obviously, Ms. Tuggle was aware of these records and she obtained counsel in late August 2013 at the latest.  Thus, she has had more than enough time to review the records and identify any material evidence therein and explain how it likely will change the disability determination.  Without that showing, Ms. Tuggle has only conjecture and speculation that something useful might be found in the missing records.  The Court requires more.

16

Ms. Tuggle has not shown that the ALJ failed to fully and fairly develop the record.

**3. Credibility determination.**  Ms. Tuggle faults the ALJ's credibility finding for several reasons.  First, she argues that the ALJ improperly relied on "gaps" in the medical evidence, first the gap between her alleged remote onset date in 2007 and the start of medical evidence in 2009 and, second, several gaps between treatments.  However, there is no indication in the ALJ's decision that she relied on these gaps in order to discredit Ms. Tuggle's credibility.   Rather, it appears that the ALJ was merely noting the chronology of the evidence.

Second, Ms. Tuggle points out the ALJ's misinterpretation of a medical note that she was noncompliant with her physical therapy "due to work schedule," (R. 287), as noting that she was noncompliant with her medication, which the ALJ specifically found undermined her credibility.  (R. 30, ¶ 2.)  The Commissioner acknowledges the ALJ's mistake.  (*Defendant's Memorandum in Support of Commissioner's Decision* [doc. 22] ("*Response*"), at 20.)  Ms. Tuggle asserts that this mistake was harmful, but fails to explain why it was harmful in the context of the entirely of the ALJ's credibility analysis.  In the context of this lack of showing of materiality, the ALJ's citation of Ms. Tuggle's more serious drug-seeking behavior (discussed below), and her finding of a lack of objective medical evidence and medical opinion supporting Ms. Tuggle's symptom and limitation allegations, the Court finds that Ms. Tuggle has not shown that this one mistake renders the ALJ's credibility findings patently wrong.

17

Third, Ms. Tuggle argues that the ALJ unreasonably found that she engaged in drug-seeking behavior, and discredited her allegations accordingly.   Ms. Tuggle reiterates the reasons that she gave to her providers for requesting refills off-schedule (two house break-ins with theft of her medications and moving out-of-state three times due to domestic instability and abuse) and argues that it was error for the ALJ to reject these reasons without inquiring into them further.   However, one of Ms. Tuggle's own treating physicians wrote that he believed she was exhibiting drug-seeking behavior, taking her medications more frequently than prescribed, and violating her substance agreement.   The provider refused to prescribe any more narcotics to her.   (R. 30-31, 236-37, 249-52, 266-68, 295-96, 359-61.)   This constitutes substantial evidence supporting the ALJ's reliance on Ms. Tuggle's drug-seeking behavior.

Ms. Tuggle has not shown that the ALJ erred in his credibility determination.

**4. Listing finding.**   Ms. Tuggle argues that she satisfies listing 1.02A and that the ALJ erred in his analysis in two ways.

First, she contends that the ALJ failed to address whether she can effectively ambulate.   One of the criteria of listing 1.02A is that the claimant is unable to ambulate effectively, which is defined as:

> an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.   In effective ambulation is define generally as having insufficient lower extremity functioning (see 1.00J) to

permit independent ambulation without he sue of a hand-held assistive device(s) that limited the functioning of both upper extremities.

20 C.F.R. Part 404, Subpart P, Appendix 1, Part A, § 1.00Ab(1).  Ms. Tuggle contends that she satisfies this definition because she has to use a cane for ambulation and has required a walker, (*Brief*, at 23, 24), yet the ALJ did not discuss her ability to effectively ambulate. Although the ALJ did not devote a section of her decision to a discussion of this criteria — and it would have been better had she done so — she mentioned occasions in the records where Ms. Tuggle was observed, or she reported, using a cane or a walker, and the ALJ explored Ms. Tuggle's  asserted use of a cane during the hearing.  The ALJ was aware of the evidence regarding her use of assistive devices but she obviously rejected any inability to effectively ambulate or need for an assistive device.  (R. 32, 34.)  In response, Ms. Tuggle only asserts her use of a cane and a walker; she cites no medical evidence or opinion supporting a medical necessity for her to use an assistive device.  See S.S.R. 96-9p.  Therefore, her asserted need for an assistive device is subjective and falls within the ALJ's credibility determination and the Court has sustained that determination above.

Second, Ms. Tuggle argues that the ALJ erred by not addressing the "opinion statement" from Witham Hospital that she needs to elevate her legs while sitting.  (*Brief*, at 24.)  She argues that "[t]he necessity of frequently elevating one's legs is evidence of the inability to ambulate effectively because one cannot ambulate effectively if elevating the legs."  (*Memorandum in Reply to Defendant* [doc. 23] ("*Reply*"), at 4.)

19

The Witham Hospital record at issue is a one-page emergency-room "Patient Visit Information" report. (R. 415.)  Under the heading "Activity Restrictions or Additional Instructions" is the note:  "Keep legs elevated frequently."  No other details are provided. It is a tentative instruction at best because the next lines instruct Ms. Tuggle to promptly make an appointment for re-evaluation by her personal physician and to take all lab work and the EKG to him.  The report goes on to note that the emergency room provided care for her acute episode of dependent edema, but that "[f]urther care is best provided by your primary care physician or health-care provider."  Ms. Tuggle points to no other medical evidence prescribing or suggesting that she elevate her legs.

In her decision, the ALJ mentioned this instruction to elevate her legs, (R. 32.), but did not otherwise articulate an evaluation of it.  However, Ms. Tuggle does not explain how it shows that she satisfies listing 1.00's definition of ineffective ambulation which requires medically necessary use of hand-held devices that functionally limit the use of both upper extremities.  The elevation instruction might significantly restrict the *time* that she had for walking, [5] but it indicates nothing about her effectiveness when doing so.

Ms. Tuggle has not shown error by the ALJ in his listing finding.

**5. Vocational analysis.**  Ms. Tuggle argues that substantial evidence does not support the ALJ's reduction, by 50%, of the number of jobs existing for Ms. Tuggle to

---

[5] In addition, the Witham Hospital report does not indicate what the author meant by "frequently."

account for her RFC restriction of a sit/stand at-will option, with sitting for twenty to thirty minutes, then standing for twenty minutes during the workday.  (R. 28, 64.) However, the ALJ relied on the expert testimony of the vocational expert who testified that the reduction would be 50%.  (R. 64.)  Ms. Tuggle argues that the vocational expert's testimony was "also without any support for his statement."  (*Brief*, at 25.)  However, the vocational expert testified that, although a sit-stand option is not addressed in the *Dictionary of Occupational Titles*, his 50% figure was based on his over thirty years' experience in the field.  (R. 65.)  Ms. Tuggle has not shown that the vocational expert's professional experience was faulty; she has not shown any evidence that the reduction for a sit-stand option should be greater than 50%; and she has not shown any reason to believe that, were her claims remanded for reconsideration of this reduction, the result likely would be a finding of disability.

Ms. Tuggle has not shown error in the ALJ's step-five determination.

**6.  Mental-health findings.**  Ms. Tuggle argues that the ALJ's analysis of her mental health is erroneous because (1) he unreasonably found that the fact that her mental health had not worsened over time was evidence that she is not disabled, and (2) his refusal to credit an assigned GAF score of 50 because the mental status exam was "unremarkable" was unreasonable because the exam, in fact, found multiple deficits and the doctor was in a better position than the ALJ to assess the severity of Ms. Tuggle's condition.

21

The ALJ's observation that "there was no indication that the claimant's mental health has significantly worsened," (R. 32, ¶ 4), does not show that he based his evaluation of the severity of her mental impairments on the lack of worsening symptoms. Rather, it appears more to be in support of his following finding that Ms. Tuggle's "mental health has stabilized with medication over time . . . ." (*Id.*) Moreover, the ALJ's analysis of Ms. Tuggle's mental health continued for another two pages, addressing and evaluating other evidence of record.  In addition, the ALJ did not find that the consultative psychiatric examination was "unremarkable;" she found that it was "*relatively* unremarkable," and only as a reason for not assigning the examiner's GAF score significant weight.  (R. 33 (emphasis added).)  The ALJ noted the remarkable and the unremarkable findings from the examination and concluded that it was mostly unremarkable.  Ms. Tuggle does not show that his analysis was erroneous.

Ms. Tuggle states that, "[a]lthough this issue may not warrant remand," it "shows a pattern in how the ALJ analyzed this case.  The ALJ's decision focuses on issues that are negative to Ms. Tuggle and fails to look at the whole picture.  This is harmful error." (*Brief*, at 26.)  The Court agrees that Ms. Tuggle's asserted errors in the ALJ's mental-health analysis do not warrant remand.  Not only does she not show that they were erroneous, she does not show that, if erroneous, they were harmful in the sense that a remand for reconsideration reasonably would result in a different disability finding.

Ms. Tuggle has not shown that the ALJ erred in her mental-health analysis.

22

## Conclusion

Because Ms. Tuggle has not shown that the ALJ's decision is not supported by substantial evidence or the result of legal error, judgment should enter in favor of the Commissioner, affirming her denial of Ms. Tuggle's claims for disability benefits.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. ▪ 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. ▪ 636(b); Fed. R. Civ. P. 72(b)(3).  Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:**  02/08/2016

*Denise K. LaRue*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.

23