UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MISTY TUGGLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 1:15-cv-00070-SEB-DKL |
| CAROLYN W. COLVIN Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE**

**JUDGE'S REPORT AND RECOMMENDATION**

This is an action for judicial review of the final decision of Defendant

Commissioner of Social Security's ("Commissioner") finding Plaintiff Misty Tuggle

("Ms. Tuggle" and "Claimant") not entitled to Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social

Security Act. *See* 42 U.S.C. §§ 416(i), 423(d), 1381a, & 1382(a). This case was referred

for consideration to Magistrate Judge Denise K. LaRue, who on February 8, 2016,

issued a Report and Recommendation that the Commissioner's decision be upheld

because Ms. Tuggle failed to demonstrate that the decision was unsupported by

substantial evidence or the result of legal error. This cause is now before the Court on

Plaintiff's Objections to the Magistrate Judge's Report and Recommendation, filed on

February 8, 2016.

## Standard of Review

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or was the result of an error of law. *Rice v. Barnhart,* 384 F.3d 363, 368–369 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). In our review of the ALJ's decision, we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez,* 336 F.3d at 539. However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her final conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue,* 671 F.3d 629, 632 (7th Cir. 2011).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, we review those elements *de novo,* determining for ourselves whether the ALJ's decision as to those issues was supported by substantial evidence or was the result of an error of law. Fed. R. Civ. Pro. 72(b). We make "the ultimate decision to adopt, reject, or modify" the report and recommendation, and it need not

adopt any portion as binding; we may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009).

## Discussion

The claimant interposes three objections to Magistrate Judge LaRue's Report and Recommendation. She alleges that Magistrate Judge LaRue mistakenly upheld the waiver of Ms. Tuggle's right to counsel during the administrative hearing. *See* Dkt. 25 at 1–5. She contends the Report and Recommendation wrongfully determined that the ALJ had fully and fairly developed the record. *See* Dkt. 25 at 1–5. Finally, she maintains that the Report and Recommendation is incorrect in upholding the ALJ's Step Five finding, despite lacking substantial evidence.[1] We review each of these objections *de novo*.

### I. Waiver of the Right to Counsel

Claimant's primary contention is that the ALJ erred in upholding Ms. Tuggle's waiver of her right to counsel during the administrative hearing. *See* Dkt. 25 at 1–5. A claimant has a statutory right to counsel at a disability hearing. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). The right to counsel may be waived, but waiver is only valid if the claimant is "given sufficient information to enable [her] to intelligently

---

[1] Claimant also objects to the ALJ's credibility finding and the analysis of her mental health, contending that the ALJ's conclusions are not supported by substantial evidence. We do not address these objections, however, because she fails to offer support for her argument or cite to any relevant authority. We deem these issues to have been waived based on these failures.

decide whether to retain counsel or proceed *pro se*." *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). If a claimant is not given adequate notice of her right, the waiver is deemed invalid. *Binion*, 13 F.3d at 245. An invalid waiver will only justify remand, however, if the ALJ also fails to "develop the record fully and fairly." *Id*. Claimant contends that she is entitled to remand because her waiver of the right to counsel was invalid, and the ALJ did not fully and fairly develop the record. *See* Dkt. 25. We disagree.

Our review leads us to conclude that Ms. Tuggle's waiver of her right to counsel at the administrative proceeding was valid because she was provided with adequate notice of her right and its significance before waiving it. The Seventh Circuit directed in *Binion v. Shalala* (*supra*) that, to ensure a valid waiver of counsel, the ALJ "must explain to the *pro se* claimant (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Id.* The record reflects that Ms. Tuggle was provided this information, either in whole or in part, on two separate occasions.

On the first occasion, Ms. Tuggle received a *Notice of Hearing* in the mail prior to the administrative proceeding. R. at 110–111. The Notice included a form entitled *Your Right to Representation*, which explained Ms. Tuggle's right to the assistance of counsel at the upcoming administrative proceeding, and contained all of the *Binion*

advice requirements necessary for a valid waiver.[2] R. at 111. The second occasion was at the administrative hearing itself. R. 45, 124. During the hearing, the ALJ orally informed Ms. Tuggle of the manner in which an attorney can aid in the proceedings (the first *Binion* element) and also provided her with a *Waiver of Representation* form that reiterated all of the advice requirements imposed in *Binion*. R. 124. The only *Binion* element missing from the *Waiver of Representation* form was a reference to the limitation on all attorney fees to 25 percent of past due benefits (part of the third *Binion* element). This omission is not fatal to Ms. Tuggle's waiver, however, because the *Waiver of Representation* form contained this information and Ms. Tuggle had previously received it. R. at 110–111.

Claimant does not contend that the ALJ was required to orally recite all of the *Binion* elements at the hearing. *See* Dkt. 25 at 2. She concedes that "written notice can be sufficient to constitute a valid waiver." Dkt. 25 at 2. Ms. Tuggle argues that the waiver is invalid because "not all of the *Binion* requirements were explained . . . in a manner in which the ALJ could have reasonably assumed that Ms. Tuggle understood what she was waiving," and "the ALJ should have inquired further to ensure that Ms. Tuggle was making a knowledgeable waiver." Dkt. 25 at 2. She maintains that the ALJ could not have known whether she actually understood the rights she was waiving because the *Your Right to Representation* form was "not clearly stated" within the *Notice of Hearing,* that she was unable to review the record prior to the administrative

---

[2] Claimant confirmed that she received the *Notice of Hearing* and the *Your Right to Representation* form by signing and returning an *Acknowledgement of Receipt* that was included with the packet of documents.

hearing, and that she could not understand the paperwork that she did receive because she has a low level of education and substandard intellect. Dkt. 25 at 1–2. In essence, Claimant argues that her waiver was invalid because the ALJ should have known that extra precautions were required since she lacked sufficient intelligence to find, read, and understand the notice provided to her in the *Your Right to Representation* form. These additional steps were unnecessary to ensure that she was knowingly executing the waiver.

To adopt Claimant's contention goes significantly beyond the *Binion* requirements, imposing an additional burden on the ALJ that the case law does not require. The Seventh Circuit expressly held in *Binion* that the ALJ's duty to inform a claimant of her right to representation is satisfied by an adequate explanation of the *Binion* requirements. *Binion*, 13 F.3d at 246. The Seventh Circuit *has* suggested that certain situations may impose a greater duty of care upon the ALJ; however, none of those special circumstances are present here. In *Smith v. Secretary of Health, Education and Welfare*, the Seventh Circuit invalidated the waiver by a claimant who had an extremely low level of education, had suffered a mental breakdown prior to the hearing, and had clearly demonstrated that she "did not understand the role that a lawyer would play in the proceeding." 587 F.2d 857, 859 (7th Cir. 1978). The Court held that when a claimant displays possible mental illness and a clear misconception as to the role of a lawyer, the ALJ has a higher duty to "[explain] these interrelated subjects in greater detail and with greater care." *Id*. at 860. Claimant has not established any basis for this

kind of stepped-up care: she does not suffer from mental illness, nor did she evidence a clear misconception of the role a lawyer would play in her administrative hearing.

Claimant has failed to demonstrate that her level of education and intelligence, though apparently substandard, necessitated a higher duty of care as found by the *Smith* Court. In *Smith,* objective and undisputed evidence established that the claimant suffered from mental illness and that she had suffered a mental breakdown prior to the hearing. *Id*. at 861. Ms. Tuggle maintains that she is entitled to a similar level of solicitousness based on her eighth-grade education, her estimated I.Q. of 80-100 ("low average to average range intellectual functioning overall"), her mildly impaired verbal comprehension, and her poor ability to perform arimetic calculations. *See* Dkt. 25 at 1– 3. There is also evidence in the record that Ms. Tuggle suffered from depression, anxiety, and polysubstance abuse. *See* R. at 26.

We are unconvinced, however, that these deficiencies prevent Ms. Tuggle from being able to read and understand the two-page *Your Right to Representation* form. Ms. Tuggle is seeking disability benefits based primarily on her physical limitations, rather than a mental disability. *See* Exhibit No. 7F, 3. Her intelligence is sufficient to allow her to have held past jobs as a convenience store cashier and nurses' aid, and there is no evidence in the record of her having suffered a mental breakdown. *Id*. at 1–2. Further, although the ALJ determined that her reading comprehension is poor and that she "has moderate limitations in her ability to maintain concentration, persistence, and pace," the ALJ also found "*[she] would be able to follow written and spoken instructions*." R. at

28 (citing the claimant's functional report) (emphasis added). Therefore, we find that her level of intelligence or mental condition is not such as would require, much less entitle her to any stepped-up standard of care by the ALJ, and that the notice provided to her in the *Your Right to Representation* form was sufficient to support her otherwise valid waiver.

Claimant also has failed to convince us that she had a clear misconception of a lawyer's role in an administrative hearing. The *Smith* court based its decision on the claimant's mental illness *and* her "clear misconception as to the role of a lawyer." *Smith*, 587 F.2d 857, 859. The record here, however, demonstrates that the ALJ orally informed the claimant as to this matter at the hearing:

> Like I said, you're not present with a representative, and so, I want to make sure you understand that you have a right to a representative and this representative would be able to obtain documents on your behalf, submit arguments on your behalf and also questions witnesses on your behalf. Are you aware of that?

R. at 45. Thus, Ms. Tuggle *was* fully appraised of her right to an attorney as well as the role the attorney would have played in the proceeding, had one been present. Claimant's objection to the contrary is unavailing.

For these reasons, we conclude that Ms. Tuggle was not entitled to a special level of solicitousness by the ALJ with regard to her right to an attorney. The combined effect of the *Your Right to Representation* form, the *Waiver of Representation* form, and the oral notice provided at the hearing sufficed to fully and adequately apprise her of the significance of her waiver. Ms. Tuggle is not entitled to reversal of the ALJ's

decision on this basis. Based on our *de novo* review, we overrule Claimant's objection to the Magistrate Judge's Report and Recommendation on the issue of her waiver of her right to counsel.

## II. The Full and Fair Development of the Record

Even if Claimant's waiver of counsel were invalid, she would not be entitled to remand because our review establishes that the ALJ fully and fairly developed the record on which her disability eligibility decision was based. It is a basic obligation imposed on the ALJ to develop a full and fair record in a social security disability hearing. *Thompson*, 933 F.2d at 585. When a claimant is without counsel, the ALJ's duty to develop the record is satisfied when the ALJ "scrupulously and conscientiously probe[s] into, inquire[s] of and explore[s] for all of the relevant facts." *Id.* at 586. *Pro se* litigants must furnish some medical evidence to support their claims, but the ALJ is required to supplement the records, as necessary, by "asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Nelms*, 553 F.3d at 1098; 20 C.F.R. §§ 416.912(d)–(f), 416.919, 416.927(c) (3).

Generally speaking, the Seventh Circuit upholds a reasoned judgment of the Commissioner in deciding how much evidence to gather, even when the claimant lacks representation. *Nelms*, 553 F.3d at 1098. Accordingly, a "significant omission" must be established before the Commissioner can be faulted for having failed to assist *pro se* claimants in fully and fairly developing the record. *Id.* (citing *Luna v. Shalala*, 22 F.3d

687, 692 (7th Cir. 1994)). An omission is "significant" only if it is prejudicial. *Id.*
"Mere conjecture or speculation that additional evidence might have been obtained in
the case is insufficient to warrant a remand." *Id.* (quoting *Binion*, 13 F.3d at 246). A
claimant must set forth specific, relevant facts—such as medical evidence—that the
ALJ failed to consider. *Id.*

This standard applies regardless of whether the unrepresented plaintiff's waiver
of counsel was valid; however, the waiver's validity *does* impact who is required to
shoulder the burden of proof. *Binion*, 13 F.3d at 245. If a waiver is valid, the burden is
on the claimant to demonstrate that the ALJ failed to fully and fairly develop the record.
*Id.* If the waiver is invalid, the burden shifts to the Commissioner to establish that the
record is complete and sufficient. *Id.* We have previously determined that Ms. Tuggle's
waiver of her right to counsel at the administrative proceeding was valid. Accordingly,
Claimant now must demonstrate that the record compiled by the ALJ was less than
fully and fairly developed.

Ms. Tuggle alleges that the ALJ fell short in this regard because the ALJ did not:
(i) ask the vocational expert sufficient questions to probe for evidence of disability, (ii)
allow her to cross examine the vocational expert following his testimony, and (iii)
obtain relevant medical records from her visit to the emergency room that occurred
after the administrative proceeding.[3] Dkt. 25 at 5–6. Ms. Tuggle's arguments fail,

---

[3] Claimant further contends that the record was inadequately developed because she did not have
enough time to review the record before the hearing. We shall not evaluate this claim, however, because
it lacks credible support. Claimant represents that she was unable to review the electronic record sent to
her on a CD because she does not have a computer, but she does not explain the reason she did not

however, because none of these omissions in the record was "significant" or prejudicial. Her contentions to the contrary are based on nothing more than her speculation that additional evidence might have been obtained, had clarifying questions been asked by the ALJ.

### A.  Failure to Adequately Interrogate the Vocational Expert

Ms. Tuggle contends that the record was not fully and fairly developed because the ALJ did not "ask the vocational expert sufficient questions to probe for evidence of disability." Dkt. 25 at 3. Specifically, Ms. Tuggle claims the ALJ failed to clarify or resolve allegedly inconsistent testimony by the vocational expert regarding a sit-stand option included in the hypothetical worker standard. R. at 65. This omission is not prejudicial, even assuming its accuracy, so remand is not available.

Vocational experts often testify in disability hearings on issues relating to the existence or not of jobs in the national economy that the complainant is still capable of performing (Step 5 of the social security DIB evaluation process). The ALJ typically creates a hypothetical case involving a worker of the same age, education and work experience as the claimant, on the basis of which the vocational expert then testifies to job availability as it applies to the hypothetical worker's attributes. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). As a general rule, the hypothetical worker "must incorporate all of the claimant's limitations supported by the medical record." *Id*. If the

---

review the file in person on the day of her hearing, despite having been given notice that she could do so.

hypothetical worker is able to perform jobs that are available in the national economy, the claimant is not entitled to disability benefits. *Id.*

At Ms. Tuggle's hearing, the ALJ included a "sit-stand option" in the hypothetical worker formulation. R. at 64. The question she posed to the vocational expert was: "What if we further limit the individual, that this individual would be able to sit or stand alternatively at will, sitting for 20 minute—20 to 30 minutes then standing for 20 minutes throughout the workday?" R. at 64. In response, the vocational expert testified that incorporating the sit-stand option would "erode the number of jobs [available] by 50 percent." R. at 64. This response led the ALJ to find that, despite the 50 percent erosion, "the number of jobs in the national economy and statewide [was] still significant," and the claimant was not entitled to disability benefits. R. at 36.

Ms. Tuggle argues that this formulation is "internally inconsistent." Dkt. 25 at 3. She maintains that a true "at will" sit-stand option allows an employee to sit or stand *whenever she wants*, and the ALJ's description of "sitting for 20 minute—20 to 30 minutes then standing for 20 minutes throughout the workday" clearly conflicts with this definition. Dkt. 25 at 3. Further, she argues, the ALJ had a duty to follow-up this apparent contradiction, and the ALJ's failure to do so erodes the sufficiency of the record and justifies remand. Dkt. 25 at 4. We find this argument unpersuasive. The ALJ's failure to pursue this inconsistency at most amounted to harmless error.

In its simplest form, Ms. Tuggle claims the ALJ's wording of the sit-stand option was confusing, causing the vocational expert to perhaps incorrectly apply the wrong sit-

12

stand option to the hypothetical worker standard. An "at will" sit-stand option qualifies Ms. Tuggle only for jobs where she has the complete freedom to sit or stand *at any time*—thereby limiting the field of potential jobs. An alternating sit-stand option allowing Claimant to sit for 20 – 30 minutes, then stand for 20 minutes (hereinafter "20-minute sit-stand option") qualifies Ms. Tuggle for any job where employees are required to stand for up to 20-minute intervals—which is a *larger* field of potential jobs. Thus, Claimant's chances of establishing her eligibility for DIB or SSI improve when the "at will" sit-stand option is applied.

Thus, to the extent potential confusion was caused by the vocational expert's response, Ms. Tuggle *benefited* from it, rather than being harmed by it. The record makes clear that the ALJ intended to apply a 20-minute sit-stand option. The ALJ stated in her decision, "Based on [the] evidence, I reduced the claimant's residual functional capacity to the limited range of sedentary work. Moreover, the claimant is limited to . . . having a sit/stand alternative at will *as sit for 20 to 30 minutes and stand for 20 minutes*." R. at 32 (emphasis added). The ALJ would not have included the "20 to 30 minutes" provision intending it to be an "at-will" sit-stand option as is clear from the context. Additionally, the ALJ cited Claimant's prior testimony to support her RFC conclusion, saying, "With regard to her limitations, the claimant testified that she would be able to stand for 20 minutes and sit for 20 to 30 minutes." R. at 29. Thus, had the ALJ expressly clarified the standard with the vocational expert—as Ms. Tuggle argues should have been done—the 20-minute sit-stand option would have been included as such. Because applying the intended 20-minute sit-stand option would qualify Claimant

13

for a larger number of potential jobs than the "at will" sit-stand option, any possible misunderstanding by the vocational expert leading him to apply an "at-will" sit-stand option would actually *help*, rather than harm, Claimant's cause. Therefore, we agree that while the ALJ should have been more specific about the sit-stand option applied here, the ALJ's failure to clarify the record is not a "prejudicial" omission, and does not affect the adequacy or fairness of the record.

### B. Failure to allow Ms. Tuggle to Question the Vocational Expert

Claimant also contends that the record was not fully and fairly developed because she was not allowed to cross examine the vocational expert. Dkt. 25 at 4. Again, we disagree. While the ALJ did not affirmatively inquire as to whether Ms. Tuggle had any questions for the vocational expert, he did not entirely foreclose her from asking any or deny her request for any opportunity to do so. Ms. Tuggle's argument here is that she was prevented from questioning the vocational expert because the ALJ preempted that opportunity by asking Ms. Tuggle questions immediately following the vocational expert's testimony, and Ms. Tuggle was afraid to interrupt. Dkt. 25 at 4. We think this objection is a stretch. It is true that the ALJ began asking Ms. Tuggle questions immediately following the vocational expert's testimony; however, she also asked Ms. Tuggle within a very few minutes if there was "[a]nything else" she wanted to ask or add. R. at 66. This occurred while the vocational expert was still present at the hearing. R. at 66. As such, Ms. Tuggle was provided an adequate opportunity to direct any questions she might have had to the vocational expert. Perhaps

the ALJ could have given Ms. Tuggle a clearer invitation to ask questions of the vocational expert, but it is clear that she was not precluded by the ALJ's actions from cross examining the vocational witness.

### C. Failure to obtain Relevant Medical Records

Finally, Ms. Tuggle argues that the record was not fully and fairly developed because the ALJ failed to obtain or address certain of her medical records. Dkt. 25 at 5–6. A *Patient Visitation Summary* was provided to Ms. Tuggle following a visit to the Witham Memorial Hospital emergency room on May 16, 2013, reflecting her diagnosis of Dependent Edema, that is, the swelling of the lower extremities caused by a buildup of fluid. R. at 415–416. In the summary, the doctor instructed Ms. Tuggle, among other things, to "keep her legs elevated frequently" and schedule a follow-up appointment with her doctor. R. at 415. Ms. Tuggle argues that the administrative record was not fully or fairly developed in that "[t]he ALJ did not obtain these records, nor did she address the opinion that she needed to keep her legs elevated frequently." Dkt. 25 at 5. We disagree with this contention by Claimant. Our review of the transcript discloses that the ALJ adequately addressed the doctor's order and the *Patient Visitation Summary* provided a substantial evidentiary account of the ER visit on the basis of which the ALJ established Claimant's RFC.

Without doubt, the ALJ adequately addressed the doctor's order to Ms. Tuggle to keep her legs elevated. In the Decision, the ALJ wrote:

> Most recently, the claimant sought emergency room treatment at the Witham Memorial Hospital on May 16, 2013 due to swelling in her legs and feet. . . .The emergency room record indicated that the claimant was diagnosed with dependent edema in her ankles and legs. She was advised to take her medications as prescribed, to elevate her legs when sitting, to avoid crossing her legs, to lose weight, to exercise regularly, to avoid tight clothes, and to shift weight from leg to leg every few minutes while standing. She was discharged the same day in a stable condition and was advised to follow up with her primary care physician.
>
> . . . .
>
> Based on this evidence, I reduced the claimant's residual functional capacity to the limited range of sedentary work.

R. at 32. This satisfies the ALJ's obligation to fully and fairly develop the record in this specific area. Although the ALJ did not obtain the full medical record of Ms. Tuggle's visit to the ER, the *Patient Visitation Summary* adequately described the disease's symptoms and required treatments—both of which the ALJ incorporated into her RFC analysis. R. at 32. Further, Ms. Tuggle does not cite any other evidence contained in the additional medical records that would likely have affected the ALJ's decision. She merely contends that "the medical records from the ER would contain more information about her edema and should explain why she would need to elevate her legs frequently." R. at 6. The absence of these vaguely referenced additional medical records does not constitute a "prejudicial omission." The *Patient Visitation Summary* contained diagnostic details which the ALJ took into account in her determination that Ms. Tuggle suffers from edema for which she was advised to elevate her legs on a frequent basis. Claimant relies on conjecture and speculation and supposition in arguing that something useful might have been tucked away in the

missing records. The ALJ had enough, and on review we, too, require more than a hunch and a guess.

Therefore, we hold that the ALJ fully and fairly developed the record, just as the Magistrate Judge ruled in her Report and Recommendation. Claimant is not entitled to remand on this basis.

### III. Lack of Substantial Evidence

Ms. Tuggle's final contention is that the ALJ's analysis resulting in a reduction of the number of potential jobs available to Claimant by 50 percent as a part of her Step Five of the DIB review was not supported by substantial evidence. Dkt. 25 at 5. She claims that the vocational expert testimony relied upon by the ALJ in reaching this conclusion was erroneous and without foundation, and that reliance constitutes reversible error. Dkt. 25 at 5.

The Social Security Administration utilizes a "five-step sequential evaluation process" in determining disability. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). At the fifth step, the burden is on the Commissioner to establish that there are jobs in the national economy which the claimant can perform. *Id*. If the claimant exhibits solely exertional limitations and is able to perform the full range of tasks at her assigned RFC level, then Medical-Vocational Guidelines ("grids") are used to determine disability. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2. The grids assign predetermined disability conclusions according to the claimant's age, work experience, education, and RFC. However, if the claimant has non-exertional limitations, or

exertional limitations that restrict the full range of employment opportunities at her assigned work level, then the grids may not be used and a vocational expert must testify as to the numbers of jobs existing in the economy for a person with the claimant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993).

Here, the ALJ found that Ms. Tuggle's inability to stand for long periods of time qualified as an exertional limitation that restricted the full range of her employment opportunities according to her assigned work level. R. at 36. The ALJ accounted for this by limiting the jobs available in the national economy to those that would allow Ms. Tuggle to sit or stand alternatively—a restriction that the ALJ found would reduce the number of jobs available by 50 percent. R. at 36. The ALJ based the 50 percent reduction solely on the vocational expert's testimony based on the sit-stand option. R. at 36. Ms. Tuggle contends that this fails to satisfy the substantial evidence standard because the sit-stand option is not contained in the Dictionary of Occupational Titles ("DOT"), and the vocational expert based *his* testimony solely on his own professional experience. *See* R. at 65 (emphasis supplied). She argues that "[t]here is nothing in the vocational expert's experience that would allow him to know with certainty the number of available jobs in the State of Indiana," and that he provided no basis for the 50 percent metric. Dkt. 25 at 5. According to Ms. Tuggle, the lack of support for this adjustment reduces the quantum of evidence that supports the ALJ's finding at Step Five. Dkt. 25 at 5. Again, we must disagree.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, we review the record as a whole without attempting to substitute our judgment for the ALJ's by "reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Id.* at 836–837. (quoting *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000)). Where conflicting evidence allows reasonable minds to differ, we defer to the Commissioner's resolution of that conflict; however, a reversal and remand may be required if the ALJ based the decision on serious factual mistakes or omissions. *Id.* at 837.

We share the view contained in Magistrate Judge LaRue's Report and Recommendation finding the vocational expert's testimony sufficient to support the ALJ's finding. Ms. Tuggle has not shown that the ALJ's determination is based on serious factual mistakes or omissions. The Seventh Circuit held in *Peterson v. Chater* that, when an applicant for disability benefits cannot sit or stand indefinitely, "a vocational expert, vocational dictionary, **or** other appropriate guide or source must be consulted to determine whether there are sufficient jobs in the national economy that the applicant is physically capable of holding to justify a conclusion that he is not disabled." 96 F.3d 1015, 1016 (7th Cir. 1996) (emphasis added). The use of the conjunction "or" by the court suggests that a vocational expert's testimony is sufficient to determine job availability when a sit-stand option is imposed, and the additional reliance on the DOT or other support is likely not necessary. Further, Ms. Tuggle fails

to demonstrate that the vocational expert's professional opinion—reportedly based on more than thirty years of experience—was in any way flawed. Nor did she produce any evidence to establish that the reduction in the number of jobs available to her reflecting a sit-stand option should have been larger than 50 percent. Claimant has provided no reason for the Court to believe that, were the case remanded, it would likely result in a finding of disability.

## Conclusion

None of Ms. Tuggle's objections to the Magistrate Judge's Report and Recommendation has merit or otherwise carries the day. Ms. Tuggle's waiver of her right to counsel at and during the administrative proceeding was valid and enforceable; the record was, in all respects, fully and fairly developed; and the ALJ's conclusions with respect to her Step Five determination were supported by substantial evidence and free from legal error. Accordingly, following our *de novo* review, Claimant's objections to the Magistrate Judge's Report are OVERRULED, and we ADOPT the recommendations set forth in the Magistrate Judge's Report and Recommendation [Dkt. 24].

IT IS SO ORDERED.

Date: 3/30/2016

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jonelle L. Redelman
REDELMAN LAW
PO Box 56033
Indianapolis, IN 46256
(317) 222-1028
Fax: (317) 222-1620
Email: jonelle@redelmanlaw.com


Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
10 West Market Street
Suite 2100
Indianapolis, IN 46204
(317) 226-6333
Fax: (317) 226-6125
Email: tom.kieper@usdoj.gov